UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Adrienne Apuzza,<br><br>                    Plaintiff,<br><br>          -v-<br><br>NYU Langone Long Island,<br><br>                    Defendant. | 2:22-cv-7519<br>(NJC) (JMW) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, District Judge:

*Pro se* Plaintiff Adrienne Apuzza ("Apuzza") alleges that her former employer, Defendant NYU Langone Long Island ("NYU Langone"), discriminated and retaliated against her on the basis of an alleged disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, when NYU Langone terminated Apuzza's employment after she refused to get vaccinated against COVID-19. Before the Court are Apuzza's Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure, ECF No. 36, and NYU Langone's Motion to Dismiss the Amended Complaint with prejudice for failure to state a claim under Rule 12(b)(6). ECF Nos. 52, 52-1, 52-2, 52-3. For the reasons below, the Court dismisses Apuzza's claims with prejudice, denies leave to amend as futile, and dismisses Apuzza's Motion for Summary Judgment as moot.

## BACKGROUND

The Court takes the following facts from the Amended Complaint. Am. Compl., ECF No. 25-1.[1] Apuzza worked as a medical technologist for NYU Langone from September 26, 1986 through September 30, 2021. *Id.* ¶ 86. On August 16, 2021, in the middle of the COVID-19 pandemic, NYU Langone notified Apuzza of then-Governor Andrew Cuomo's Executive Order requiring all healthcare workers employed in New York to receive their first COVID-19 vaccine dose by September 27, 2021. *Id.* ¶ 93. On September 1, 2023, NYU Langone notified Apuzza that the only exemptions from the vaccine mandate were for "pre-existing medical conditions." *Id.* ¶¶ 94–95. On September 10, 2021, NYU Langone notified Apuzza that employees who did not have a scheduled vaccination appointment by September 22, 2021 would be terminated. *Id.* ¶ 97.

On September 13, 2021, Apuzza scheduled a meeting with Derek Forte in NYU Langone Human Resources for September 21, 2021. *Id.* ¶ 98. Ahead of that meeting, on September 17, 2021, Apuzza sent Forte a letter titled, "Notice of Discrimination and Harassment" in which she asked why NYU Langone "discriminated against her based upon a disability they were regarding her as having." *Id.* ¶¶ 100–101. On September 21, 2023, Apuzza met with Forte to discuss her letter. *Id.* ¶¶ 103–04. On September 24, 2021, Apuzza received an email from Forte informing her that her harassment claim was found to be unsubstantiated. *Id.* ¶ 114.

---

[1] Defendant's Motion to Dismiss provides citations to the Amended Complaint docketed at ECF No. 21-1. This Court's April 25, 2023 Order, however, clarifies that the operative pleading is Plaintiff's Amended Complaint, supporting affidavit, and exhibits located at ECF No. 25-1. *See* Apr. 25, 2023 Electronic Order. Both versions of the Amended Complaint are signed and dated March 28, 2023 and, so far as the Court can discern, are identical. This opinion will provide citations to the Amended Complaint docketed at ECF No. 25-1.

In mid-September, NYU Langone notified Apuzza "that her employment would be terminated without an approved exemption or proof of first vaccination by September 27, 2021." *Id.* ¶ 112. On September 28, 2021, NYU Langone notified Apuzza that her employment would be terminated if, by 5:00 pm the following day, she had not received her first dose of the COVID-19 vaccine, did not have an approved or pending medical exemption, or had not filed for a religious exemption. *Id.* ¶ 116. On September 30, 2021, Apuzza went into work because she had not yet been terminated. *Id.* ¶ 118. That evening, Apuzza's supervisor left her a voicemail terminating her employment. *Id.* ¶¶ 119–20.

On August 13, 2022, Apuzza filed a charge of employment discrimination on the basis of disability and retaliation with the EEOC. Apuzza Aff. ¶ 36, ECF No 25-1. The EEOC issued her a Notification of Right to Sue on October 20, 2022. Am. Compl. ¶ 3.

Apuzza filed this lawsuit on December 9, 2022. Compl., ECF No. 1. On April 25, 2023, the Court ordered that the Amended Complaint, supporting affidavit, and exhibits are the operative pleading. Am. Compl., ECF No. 25-1. The Amended Complaint brings two main claims: that NYU Langone violated Apuzza's rights under the ADA by (1) discriminating against her for having a disability, and (2) retaliating against her for objecting to NYU Langone's vaccine mandate. Apuzza's Amended Complaint also claims that NYU Langone violated the ADA by (1) imposing mitigation measures without individualized assessment, Am. Compl. ¶ 39; (2) failing to provide sufficient accommodations, *id.* ¶ 192; (3) requiring "medical inquiries, test and treatments," *id.* ¶ 42; and (4) violating Apuzza's right to medical privacy, *id.* ¶ 178. Apuzza further claims that NYU Langone had no legal right to impose the vaccine mandate, *id.* ¶ 80; that the vaccine mandate violated public health laws, *id.* ¶ 31; that the vaccine mandate violated

"rights that form the bedrock of modern society," *id.* ¶ 79. The Court addresses each of these claims below.

On June 20, 2023, Apuzza moved for summary judgment. Pl's Mot. Summary J., ECF No. 36. NYU Langone opposed the motion on July 6, 2023 and Apuzza replied on July 24, 2023. Def's Opp'n Mot. Summary J., ECF No. 44; Pl's Reply Supp. Mot. Summary J., ECF No. 49.

On February 24, 2023 and May 9, 2023, NYU Langone requested a pre-motion conference in anticipation of filing a motion to dismiss the Amended Complaint under Rule 12(b)(6), Fed. R. Civ. P. ECF Nos. 17, 27. On July 27, 2023, this Court denied NYU Langone's request for a pre-motion conference on its anticipated motion to dismiss and set a briefing schedule. NYU Langone's fully-briefed motion was filed on October 16, 2023. ECF No. 52.

## STANDARD OF REVIEW

This Court is required to construe pleadings "filed by *pro se* litigants liberally and interpret them to raise the strongest arguments that they suggest." *Hunter v. McMahon*, 75 F.4th 62, 67 (2d Cir. 2023) (internal quotation marks and citation omitted). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (internal quotation marks and citation omitted).

Nevertheless, to avoid dismissal, a *pro se* complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The plausibility standard requires

"more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *accord We The Patriots USA, Inc. v. Connecticut Off. of Early Childhood Dev.*, 76 F.4th 130, 144 (2d Cir. 2023). While "detailed factual allegations" are not required, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citations omitted). A complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks, alterations, and citations omitted).

## DISCUSSION

### I. Apuzza's Disability Discrimination Claim Fails

The ADA prohibits an employer from discriminating against a qualified employee on the basis of disability. 42 U.S.C. § 12112(a). Courts apply the *McDonnell Douglas* burden-shifting framework to analyze ADA discrimination claims. *See Bey v. City of New York*, 999 F.3d 157, 165 (2d Cir. 2021). "Under that framework, the plaintiff must first establish a *prima facie* case. If she succeeds in doing so, the burden then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its actions." *Razzano v. Remsenburg-Speonk Union Free Sch. Dist.*, No. 20-3718, 2022 WL 1715977, at *2 (2d Cir. May 27, 2022).

To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must show that:

> (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [the plaintiff's] employer; (3) [the plaintiff] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [the plaintiff] suffered an adverse employment action; and (5) the adverse action was imposed because of [the plaintiff's] disability.

*Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). Under the ADA, a "disability" is: "(A) a physical or mental impairment that substantially limits one or more major life activities

5

of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Here, Apuzza alleges a qualifying disability under the "record of" and "regarded as" prongs, arguing that NYU Langone made a record of her having a physical or mental impairment that substantially limits one or more major life activities and regarded her has having an impairment, whether or not that impairment was perceived to limit or actually limited a major life activity.

There are two initial matters to address before considering the plausibility of Apuzza's allegations. The first is which party bears the initial burden under the ADA to make out a *prima facie* case of disability discrimination. Apuzza's Amended Complaint asserts that "the burden of proof is upon defendant to prove that it qualified for an exemption or exception to their legal duties to comply with the ADA." Am. Compl. ¶ 136. This is incorrect. At the motion to dismiss stage, the plaintiff must plead sufficient facts to plausibly establish a *prima facie* showing of all five elements of a disability discrimination claim. *See Bey*, 999 F.3d at 165. That is the inquiry before the Court at this stage of the proceedings. The issue is not whether NYU Langone is subject to the ADA; NYU Langone does not dispute that it is subject to the statute.

The second matter is whether Apuzza alleges a present or future impairment so as to plead a qualifying disability. The Amended Complaint describes Apuzza's alleged impairment as NYU Langone treating her as if she had "a deadly, contagious disease, or else, a suppressed immune system that makes her prone to contracting a contagious disease that can be transmitted to others." Am. Compl. ¶ 141. In its opening brief, NYU Langone frames Apuzza's alleged disability as the impairment of "being at risk for developing COVID-19 in the future." Def's Mot. Dismiss, ECF No. 52-1 at 7. Apuzza's opposing brief clarifies that "Plaintiff is not arguing a disability existing in the future, she claims that she is being perceived as disabled now"

6

because the alleged impairment is "that of currently having an on-going condition of contagiousness." Pl's Opp'n Def's Mot. Dismiss, ECF No. 52-2 at 5. Apuzza also clarified that she "never claimed to have been diagnosed with 'COVID-19'," *id.* at 10, and the Court notes that Apuzza does not allege that she ever sought an exemption under the vaccine mandate's exemptions for people with pre-existing medical conditions.

The confusion over whether Apuzza alleges a future or present impairment appears to stem from the fact that the word "contagion" means both "disease" and "the transmission of disease from an infected person." *See Contagion*, Miriam-Webster, https://www.merriam-webster.com/dictionary/contagion (last visited Dec. 28, 2023). Having an "on-going condition of contagiousness" can be understood both as a present impairment (where contagiousness is a present condition of being susceptible to illness) and future impairment (where contagiousness is a risk of future illness). Because *pro se* pleadings must be read "to raise the strongest arguments that they suggest," this Court will consider both formulations of the impairment. *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (internal quotation marks and citation omitted).

A. <u>Apuzza Fails to Allege That NYU Langone Regarded her as Having a Current Impairment</u>

A plaintiff is "regarded as" having a disability if they were "subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A).

Apuzza asserts that "Plaintiff sufficiently alleged that she is disabled <u>within the meaning of the ADA</u> because she gave notice that she was regarded as disabled." Pl's Opp'n at 4 (emphasis in original). Despite this contention, the Court notes that Apuzza never sought an

7

exemption from NYU Langone's requirement that all healthcare workers be vaccinated despite NYU Langone alerting her as early as September 1, 2023 that exemption from the vaccine mandate was available for people with pre-existing medical conditions. Am. Compl. ¶¶ 94–95. Whether Apuzza's alleged impairment is the (1) present "on-going condition of contagiousness," or the (2) future risk of developing COVID-19, Apuzza's argument that NYU Langone "regarded her" as disabled fails because she admits that her argument is premised on the notion that NYU Langone regarded *all* of its employees as having that condition. *See, e.g.*, Am. Compl. ¶¶ 32–33 ("The policy perceives all employees as impaired and in need of treatment . . . The policy regards all 'untreated' employees as disabled with a deadly contagious disease without relying upon any individualized assessment.").

Courts around the country routinely reject arguments identical to the one Apuzza makes here because it is illogical that an employer would regard *all* of their employees as disabled. *See, e.g. Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22CV2936AMDJRC, 2023 WL 2163774, at *5 (E.D.N.Y. Feb. 22, 2023), *motion for relief from judgment denied*, No. 22CV2936AMDJRC, 2023 WL 3159233 (E.D.N.Y. Apr. 28, 2023) (plaintiff did not plausibly allege defendant "regarded her as having an impairment, because [plaintiff's argument] is premised on her theory that the defendant viewed every employee as disabled."); *Mone v. New York State Unified Ct. Sys.*, No. 21 CV 6914 (DG)(LB), 2023 WL 4424093, at *9 (E.D.N.Y. Mar. 22, 2023), *report and recommendation adopted*, No. 21CV06914DGLB, 2023 WL 4073770 (E.D.N.Y. June 20, 2023) ("That an employer requires an employee to follow generally applicable COVID-19 safety rules and enforces those policies when an employee fails to comply does not, without more, support the inference that the employer regards the employee as disabled."); *Newell v. State Univ. of New York Westchester Cmty. Coll.*, No. 22-CV-08524 (PMH), 2023 WL 4082030, at *4 (S.D.N.Y.

8

June 20, 2023) (plaintiff failed to state a claim that defendant regarded her as having a disability where plaintiff "merely alleges that she was subject to the same Covid-19 protocols to which all WCC employees were subject."); *Speaks v. Health Sys. Mgmt., Inc.*, No. 22-CV-77, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("[I]nferring that [defendant] classified [plaintiff] as impaired by requiring her to become vaccinated or seek an exemption would mean that [defendant] considered all its employees to have an 'impairment,' which is of course not a plausible inference, particularly in light of the possibility of an exemption."); *Shklyar v. Carboline Co.*, 616 F. Supp. 3d 920, 925–26 (E.D. Mo. July 21, 2022) ("[Plaintiff's] amended complaint show[s] that [her employer] classified [her] in the same way that it classified all of its RD&I employees. Inferring that [the employer] misclassified [plaintiff] as having a disability would therefore require inferring that [the employer] misclassified all of its RD&I employees as having a disability. Such an inference is not reasonable.").

As to the formulation of Apuzza's argument that NYU Langone regarded Apuzza as "having the on-going condition of contagiousness," courts in this Circuit agree that the "perception of infectiousness" is not the same as the perception that a person has an impairment triggering the ADA's protection even where the plaintiff actually contracted COVID-19, which Apuzza did not. *See, e.g.*, *Earl v. Good Samaritan Hosp. of Suffern*, No. 20 CV 3119 (NSR), 2021 WL 4462413, at *6 (S.D.N.Y. Sept. 28, 2021) (rejecting argument that plaintiff plausibly alleged a qualifying disability because defendant perceived plaintiff to be infectious as "wholly speculative" where plaintiff had contracted and recovered from COVID-19).

The alternative formulation of Apuzza's impairment—that NYU Langone regarded her and all other employees as at risk of developing COVID-19 in the future—also fails because the ADA does not cover future impairments. *See, e.g.*, *D'Cunha v. Northwell Health Sys.*, No. 1:22-

9

CV-0988 (MKV), 2023 WL 2266520, at *5 (S.D.N.Y. Feb. 28, 2023), *aff'd sub nom. D'Cunha v. Northwell Health Sys.*, No. 23-476-CV, 2023 WL 7986441 (2d Cir. Nov. 17, 2023) ("Even if [plaintiff] *was* perceived of being at risk of developing COVID-19 *in the future*, that would not plausibly state an ADA claim.") (emphasis in original).

In short, neither reading of Apuzza's argument makes out a plausible claim that NYU Langone "regarded" her as having an impairment so as to trigger the ADA's protection.

B. <u>Apuzza Fails to Allege That NYU Langone Kept a Record of her Impairment</u>

Apuzza next argues that she has pled a disability under the prong of the ADA that protects a person with a "record of" an impairment that substantially limits a major life activity. A plaintiff has a "record" of a disability if she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k)(1). Here, Apuzza alleges that "Defendant made a record of disability by classifying plaintiff as an 'untreated' employee, because she refused 'Covid vaccines', refused mask-wearing, and submitted to 'PCR testing' under duress while she opposed having her medical privacy rights violated by 'vaccine attestation', 'PCR testing', temperature taking, and health surveys." Am. Compl. ¶ 151. Apuzza also alleges that NYU Langone's vaccine mandate "makes a record of impairment by misclassifying all 'untreated' employees," that is, employees who did not get vaccinated, "as 'direct threats'." *Id.* ¶ 35.

Apuzza's argument fails for two independent reasons. First, as another court has found, making a record that a person was unvaccinated does not qualify as recording them "as having an 'impairment' that limited one of her 'major life activities.'" *Johnson v. Mount Sinai Hosp. Grp., Inc.*, 2023 WL 2163774, at *3–4. As the *Johnson* court observed, "[r]ather, following New York state law, the hospital required the plaintiff and all employees to get vaccinated against COVID-

10

19, unless they received an exemption . . . A hospital does not "misclassify" employees—who are charged with taking care of vulnerable people—merely by requiring them to be vaccinated against a potentially deadly disease." *Id.*; *see also Mone*, No. 21 CV 6914 (DG)(LB), 2023 WL 4424093, at *10 ("Defendant may have recorded plaintiffs as noncompliant or even unvaccinated, but that alone is insufficient to demonstrate defendant misclassified plaintiffs as having an impairment of any sort, let alone a disability as defined by the ADA."); *Speaks*, 2022 WL 3448649, at *5 ("[I]nferring that [defendant] classified [plaintiff] as impaired by requiring her to become vaccinated or seek an exemption would mean that [defendant] considered all its employees to have an 'impairment,' which is of course not a plausible inference, particularly in light of the possibility of an exemption" for qualifying employees.).

Second, Apuzza fails to allege specific facts making it plausible that her impairment substantially limited one or more major life activities, as required by the statute. *See generally* Am. Compl. Therefore, Apuzza fails to make the threshold showing that she was disabled under the "record of" prong of the ADA. *See, e.g.*, *Mone*, 2023 WL 4424093, at *10 (dismissing plaintiff's "record of" claim where plaintiff fails to allege "any details supporting how the alleged impairments substantially limit[ed] any major life activities[.]") (emphasis in original) (internal quotation marks and citation omitted).

## II. Apuzza's Retaliation Claim Fails

"To state a claim for ADA retaliation, 'a plaintiff must allege that: (1) [they] engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [them]; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6651, 2020 WL 3403191, at *11 (E.D.N.Y. June 19, 2020) (alterations omitted) (quoting *Caskey v. County of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order)).

11

Here, the Amended Complaint alleges that Apuzza engaged in the protected activity of "opposing [Defendant's] discriminatory 'Covid policy', pointing out the defendant's ADA violations, and by arguing that defendant was not exempt from complying with the ADA." Am. Compl. ¶ 217. The Court understands this to refer to Apuzza's serving NYU Langone with the letter titled "Notice of Discrimination and Harassment" on September 17, 2021. *Id.* ¶¶ 100–101.

Even assuming that Apuzza adequately alleges that she engaged in protected activity, Apuzza's retaliation claim fails because she does not plead sufficient facts to plausibly allege that the protected activity, rather than NYU Langone's vaccine mandate, caused her termination. Indeed, Apuzza seems to allege both that NYU Langone "decided to ignore" her protected activity, *id.* ¶ 218, and that this activity is the "only reason" for the adverse employment actions NYU Langone took against her, *id.* ¶¶ 219–20. Those adverse employment actions were (1) segregating Apuzza with other "unvaccinated" employees who were restricted from specific entrances to the hospital; (2) making termination the consequence for noncompliance; (3) making non-compliant employees unentitled for unemployment benefits or subsidized healthcare; (4) requiring Apuzza to disclose her vaccine status; (5) requiring "prohibited medical tests, treatments and inquiries," *id.* ¶¶ 204–9; and (6) terminating Apuzza's employment, *id.* ¶ 213.

Apuzza fails to meet the required causation showing because NYU Langone's vaccine mandate, requiring termination of noncompliant employees, was already in place and being implemented when Apuzza engaged in the allegedly protected activity of objecting to it. NYU Langone notified Apuzza of the vaccine mandate on August 16, 2021, nearly a full month before Apuzza served NYU Langone with her "Notice of Discrimination and Harassment" on September 17, 2021. *Id.* ¶¶ 93, 100–101. But Apuzza "cannot show a causal connection between

12

her opposition and her termination" because "[w]hile the plaintiff's refusal to comply with the defendant's COVID-19 policies was clearly the basis for her termination, the defendant adopted its policies before the plaintiff objected to vaccinations and masking." *Johnson v. Mount Sinai Hosp. Grp., Inc.,* 2023 WL 2163774 at *7; *see also Mone*, 2023 WL 4424093, at *12 (finding plaintiff failed to show causation where plaintiff's opposition to defendant's vaccine mandate occurred after the mandate was implemented); *Kosiba v. Catholic Health Sys. of Long Island, Inc.*, No. 21-CV-6416, 2022 U.S. Dist. LEXIS 209772, *22 (E.D.N.Y. Nov. 18, 2022) (dismissing retaliation claim where alleged adverse actions were implemented before plaintiff objected to them), *report and recommendation adopted*, No. 21-CV-6416, 2022 U.S. Dist. LEXIS 224717 (E.D.N.Y. Dec. 12, 2022).[2] The Amended Complaint admits as much: "Defendant's 'Covid policy' itself creates the causal connection between the imposed measures and the consequences for refusing them, including termination." Am. Compl. ¶ 262. Because NYU Langone's vaccine mandate requiring termination for non-compliance was already in place when Apuzza objected to it, Apuzza cannot show that her objection caused her termination. Accordingly, Apuzza's retaliation claim fails.

### III. Apuzza's Additional ADA Claims Fail

Apuzza's additional claims also fail to state plausible violations of the ADA.

---

[2] *See also Speaks*, 2022 WL 3448649 at *6 ("it is not reasonable to infer that there was a causal connection between [plaintiff's] criticism of the policy and [plaintiff's] termination" where "the policy—which was undisputedly the grounds for [plaintiff's] termination when she chose to remain unvaccinated—was enacted before [plaintiff] spoke up in opposition to the vaccination requirement."); *Shklyar*, 616 F. Supp. 3d at 927–98 (not reasonable to infer a causal connection to plaintiff's alleged protected activity where plaintiff was terminated pursuant to policies implemented before her alleged protected activity).

13

A. <u>Apuzza's "direct threat" and accommodations claims fail because Apuzza has not plausibly alleged that she has a qualifying disability under the statute.</u>

Apuzza makes two claims that both fail because she has not plausibly alleged that she has a qualifying disability under the ADA. The first claim is that NYU Langone's vaccine mandate imposes mitigation measures "without considering an individualized medical assessment of an employee's health," treating all employees as "direct threat[s]," in violation of the ADA. Am. Compl. ¶¶ 39, 181.

The "direct threat" provision of the ADA is an affirmative defense to a charge of discrimination. *See* 42 U.S.C. § 12113(b); 29 C.F.R. § 1630.2(r). Under this defense, the employer argues that the application of a requirement "that an individual shall not pose a direct threat to the health and safety of other individuals in the workplace," 42 U.S.C. § 12113(b), is "job-related and consistent with business necessity" and "cannot be accomplished by reasonable accommodation," 42 U.S.C. § 12113(a). Like other affirmative defenses, the "direct threat" provision only applies after a plaintiff has made out a *prima facie* showing of discrimination. "Because the plaintiff did not 'allege facts showing that she is an individual with a disability,' the direct threat provision is 'inapplicable' in this case." *Johnson v. Maximus Servs. LLC*, No. 22CV2935AMDJRC, 2023 WL 5612826, at *5 (E.D.N.Y. Aug. 30, 2023) (internal citations omitted).

Apuzza's second claim is that "[t]he 'accommodations' of religious or medical exemptions fail to meet the statutory requirements of ADA compliant accommodations as defined in 29 CFR Part 1630.2(o) because the 'exemptions' offered are not job-related adjustments to the workplace environment." Am. Compl. ¶ 192. Apuzza's challenge to the vaccine mandate's accommodations fails because Apuzza has not plausibly alleged that she has a qualifying disability within the meaning of the ADA. *See McBride v. BIC Consumer Prods. Mfg.*

14

*Co., Inc.*, 583 F.3d 92, 97 (2d Cir. 2009) (to make out a reasonable accommodation claim, plaintiff must first show that she has a disability under the meaning of the ADA).

    B. <u>Apuzza's improper medical inquiries and medical privacy claims fail because inquiries about vaccine status are not prohibited under the ADA.</u>

Apuzza makes two claims that both rely on the incorrect theory that inquiries about vaccine status are cognizable under the ADA. The first claim is that NYU Langone's vaccine mandate violated the ADA by "require[ing] medical inquires, tests and treatments which are intended to identify which employees remain 'untreated' and thus are still perceived as 'direct threats' because of a perceived disability/impairment." Am. Compl. ¶ 42. Apuzza argues these inquiries violated the ADA's prohibition on inquiries "as to whether such employee is an individual with a disability or as to the nature or severity of the disability." *Id.* ¶ 47; 29 C.F.R. § 1630.13(b). The "medical inquiries, tests and treatments" that Apuzza challenges include COVID-19 mitigation measures, such as "wearing masks, taking 'Covid tests', taking 'Covid vaccines', quarantining, segregating, answering surveys, giving vital statistics, reporting 'vaccine' status, waiving medical privacy, waiving informed consent." Am. Compl. ¶ 33 n.3. Apuzza argues that "[n]one of the disability-related medical inquiries, tests and treatments are related to the essential job function of the employee," *id.* ¶ 46, and that according to EEOC Guidance, "an employer must have objective evidence of a disease <u>before</u> it makes medical inquiries or imposes testing." Pl's Opp'n at 10 (emphasis in original).

Apuzza's argument fails, however, because the measures she challenges are not the types of inquiries prohibited by the ADA. Courts have routinely found that the measures Apuzza identifies are not prohibited by the ADA because they reveal whether a person has COVID-19, which is not a disability under the ADA. S*ee, e.g.*, *Johnson v. Maximus Servs. LLC*, 2023 WL 5612826, at *5 (dismissing claim because inquiries into plaintiff's vaccination status could only

15

reveal "the plaintiff's vaccination status or a temporary Covid-19 infection, neither of which is a disability under the ADA"); *Sharikov v. Philips Med. Sys. MR, Inc.*, 659 F. Supp. 3d 264, 280 (N.D.N.Y. 2023) ("Plaintiff has not alleged facts plausibly suggesting that a vaccine attestation, an inquiry regarding whether he had contact with any infectious people, COVID-19 testing, and daily temperature screenings are inquiries or medical examinations that 'would reveal disabilities.'"); *Friend v. AstraZeneca Pharms. LP*, No. SAG-22-03308, 2023 WL 3390820, at *5 (D. Md. May 11, 2023) ("AstraZeneca's inquiry about vaccination status, however, did not constitute a medical examination or an inquiry about a disability or disabling condition."); *Jorgenson v. Conduent Transport Sol'ns, Inc.*, No. SAG-22-01648, 2023 WL 1472022, at *5 (D. Md. Feb 2, 2023) (dismissing plaintiff's ADA claim because defendant's COVID-19 vaccine "attestation requirement did not constitute a medical examination or an inquiry about a disability"); *Chancey v. BASF Corp.*, No. 3:22-cv-34, 2022 WL 18438375, at *4 (S.D. Tex. Dec. 29, 2022) (plaintiff's claims that his employer required him to submit to weekly COVID-19 testing, imposed distance requirements, and masking did not constitute disability-related inquiries or medical examinations).

Apuzza's second argument fails for the same reason. Apuzza argues that "Defendant's 'Covid policy' violates 29 CFR §1630.14(c) of the ADA because it involves sharing non-job-related medical classification (e.g. 'vaccination status' and vital statistics and 'PCR' testing history) without any regard to confidentiality, including with a third party company." Am. Compl. ¶ 178. Apuzza's opposition brief also argues that requiring her to use certain entrances based on her vaccination status violated her privacy rights under the ADA. *See* Pl's Opp'n at 12. Regulations interpreting the ADA provide that information obtained through required medical examinations or inquiries "shall be collected and maintained on separate forms and in separate

medical files and be treated as a confidential medical record." 29 C.F.R. § 1630.14(c)(1). Apuzza's claim fails because, as noted above, information about vaccine status is not considered a disability-related inquiry or medical examination as a matter of law. Additionally, "as discussed above, [Plaintiff] did not 'suffer from a disability within the meaning of the ADA,' so 'the ADA's non-disclosure duty was not triggered.'" *Johnson v. Maximus Servs. LLC,* 2023 WL 5612826, at *5 (citations omitted); *see also Mendoza v. J.M. Smucker Co.*, No. 5:22-CV-02281, 2023 WL 3588280, *7 (N.D. Ohio May 22, 2023) (finding that employer's public segregation of employee based on her refusal to receive COVID-19 vaccine did not violate medical privacy requirements under the ADA because information regarding employee's COVID-19 vaccine status was not disability-related inquiry).

C. The remainder of Apuzza's claims fail for lack of plausible factual support.

Apuzza argues that "defendant has no legal duty or 'obligation' to implement the 'Emergency Regulation,'" and that "defendant had no legal duty to 'stop the spread of COVID.'" Pl's Opp'n at 2–3; *see also* Am. Compl. ¶ 80 ("how did defendant suddenly acquire a new legal authority or legal duty to treat plaintiff, its employee, for an impairment without any medical examination or diagnosis?"). Apuzza further alleges that the vaccine mandate "inherently violates public health laws," *id.* ¶ 31, and that the "policy attempts to overcome established rights that form the bedrock of modern society," *id.* ¶ 79. These arguments are irrelevant to Apuzza's discrimination or retaliation claims. *See, e.g.*, *Librandi v. Alexion Pharms., Inc.*, No. 3:22CV1126(MPS), 2023 WL 3993741, at *10 (D. Conn. June 14, 2023) (finding that plaintiff's assertion that her employer lacked authority to require employees to be vaccinated against COVID-19 was "irrelevant to her ADA claim"). To the extent that Apuzza advances these arguments as standalone legal claims, they fail for lack of sufficient facts and legal support.

17

*Iqbal*, 556 U.S. at 678 (holding that a complaint fails to state a claim "if it tenders naked assertions devoid of further factual enhancement").

### IV. Leave to Amend Would be Futile

Although "federal courts should 'liberally permit pro se litigants to amend their pleadings' . . . 'leave to amend need not be granted when amendment would be futile.'" *Johnson v. Maximus Servs. LLC,* 2023 WL 5612826, at *6 (citing *Terry v. Inc. Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016)). Here, per this Court's April 25, 2023 Order, Apuzza has already amended her Complaint once. *See* Am. Compl, ECF No. 25-1. Because neither Apuzza's original Complaint nor her Amended Complaint "could possibly state a cognizable claim for relief, granting leave to amend would be unproductive." *Johnson v. Mount Sinai Hosp. Grp., Inc.,* 2023 WL 2163774, at *7 (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)).

### CONCLUSION

For the reasons set forth above, NYU Langone's Motion to Dismiss, ECF Nos. 52 & 52-1, is granted in its entirety. Because the Court dismisses the Amended Complaint and finds that leave to amend would be futile, Apuzza's Motion for Summary Judgment is denied as moot. Accordingly, the Clerk of Court is directed to close this case.

Dated: Central Islip, New York

December 29, 2023

                                                                       _____/s Nusrat J. Choudhury_____
                                                                        NUSRAT J. CHOUDHURY
                                                                        United States District Judge